DRAFT COMPLAINT
ATTORNEY WORK PRODUCT
May 4, 2022

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,[1] | CIVIL ACTION NO.: |
| **Plaintiff,** | |
| **v.** | **DEMAND FOR JURY TRIAL** |
| THE NATIONAL RAMAH COMMISSION, INC., CAMP RAMAH, and RABBI ETHAN LINDEN, in his individual capacity, | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Jane Doe,[1] by and through her undersigned counsel, brings this Complaint against Defendants The National Ramah Commission, Inc. ("Ramah Commission"), Camp Ramah in the Berkshires ("Camp Ramah") (together with the Ramah Commission, "Ramah"), and Rabbi Ethan Linden ("Linden"), in his individual capacity (collectively, "Defendants"), for damages and injunctive relief under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"), the New York State Human Rights Law ("NYSHRL"), negligence and negligent supervision under New York common law, and other related claims.

### I.      PRELIMINARY STATEMENT

---

[1] Jane Doe is a pseudonym for Plaintiff's true name. Plaintiff's identity has been protected because she was a minor during the time of the underlying incident and due to the sensitive nature of the facts of this case.   Plaintiff's identity is known to Defendants.

1.      Plaintiff Jane Doe is a young female who attended Camp Ramah in the Berkshires as a minor in July and August 2018, and had also attended Camp Ramah in the Berkshires during the summers of 2015, 2016 and 2017. While attending Camp Ramah, Plaintiff was under the substantial and possibly, full control of Camp Ramah and Linden.

2.      The hours she was to be awake were controlled by the Defendants.

3.      The activities that were available for the Plaintiff to participate during her waking hours were controlled by the Defendants.

4.      The location of the Plaintiff during her time at the camp were under the direct control of the Defendants.

5.      Importantly, the other campers with whom Plaintiff came into contact with, and who were in the same location and participated in the same activities as Plaintiff, were also under the control of the Defendants.

6.      During her time at Camp Ramah, Plaintiff was the victim of sexual assault by a male camper, John Roe,[2] which occurred while she was sleeping.

7.       Immediately thereafter, Rabbi Linden, the Director of Camp Ramah, was informed that Plaintiff had been sexually assaulted by a male camper.  Despite having actual knowledge of the sexual assault of a minor female camper by a minor male camper, Camp Ramah and Linden acted with deliberate indifference and failed to follow each of these standard camp protocol, as set out by the American Camp Association, which requires, *inter alia*, (i) that incidents of sexual abuse be reported to the authorities for investigation, (ii) that the perpetrator be isolated or removed from the camp, and (iii) that the family of the victim be informed immediately.

_____

[2] John Roe is a pseudonym for the minor male camper who sexually assaulted Plaintiff.  His name is known to Defendants or can be revealed to them.

8.      Unfortunately, this was not an isolated incident.  There is a history of improper and inappropriate sexual incidents against female campers at Camp Ramah during the time that Defendant Linden was the Director of this camp.  Further deliberate indifference by Camp Ramah and Linden can be seen by the history of improper and inappropriate sexual incident at this Camp that did not lead to any changes to provide protection for the minors entrusted to this Camp by their parents.

9.      Further deliberate indifference by Camp Ramah and Linden are seen by their attempt to cover up the incident involving Ms. Doe, and ensure that the parents of the Plaintiff did not learn of the incident in a timely fashion.

10.     This cover-up included Linden instructing Plaintiff not to tell her parents that she had been the victim of sexual assault.

11.     This cover-up included Camp Ramah and Linden permitting the perpetrator to remain at camp and in Plaintiff's presence.

12.     This cover-up included failing to inform Ms. Doe's parents of this incident in the hours and days after it occurred.

13.     Camp Ramah and Linden should have supported Plaintiff and provided her with a safe environment, including an environment free from her perpetrator, therapeutic counseling and guidance.  Instead, Ms. Doe fell victim to the Defendants' discriminatory bias toward victims of gender-based sexual assault and as a result, in clear violation of her rights under Title IX, she suffered and continues to suffer damages, including humiliation and emotional trauma.

14.     The sexual assault which Plaintiff experienced at Camp Ramah, coupled with Camp Ramah's and Linden's indifference towards Plaintiff and their protection of the perpetrator, terrified Plaintiff and had an impact on her mental health and wellbeing.

15.     By allowing the perpetrator of these acts to remain in the educational facility in the days and weeks after this quite obviously offensive and severe sexual assault incident, by exercising substantial control over the Plaintiff and thereby ensuring that the Plaintiff would be forced to be in the same area and location as the perpetrator, the Defendants ensured that Ms. Doe would not be able to participate in, and have access to, the same educational activities and opportunities as others at Camp Ramah.

16.     Ms. Doe now brings these claims to end the gender based violence, discrimination, harassment, and humiliation which she suffered, and which other minor campers are likely to suffer, at Camp Ramah.

## II.     JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. In addition, Plaintiff brings her complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as (a) the parties are completely diverse in citizenship: Plaintiff is, and at all relevant times has been, a citizen of New Jersey, and Defendants are citizens of New York; and (b) the amount in controversy exceeds $75,000.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## III.     PARTIES

19.     Plaintiff is a young female who resides in New Jersey.  Plaintiff was a minor when she attended Camp Ramah.

20.     Defendant the National Ramah Commission, Inc. ("Ramah Commission") is located at 3080 Broadway, New York, New York.  The Ramah Commission directs and supervises the operations of a group of camps, including Camp Ramah in the Berkshires, which further the educational and religious development of conservative Jewish youth.

4

21.     Defendant Camp Ramah in the Berkshires ("Camp Ramah"), located in Wingdale, New York, is a residential summer camp for youths. Camp Ramah purports to educate children in the traditions, history and values of Judaism and receives federal funding for various educational programs. Camp Ramah touts itself to prospective families as a "vibrant summer camp community, where children grow in a beautiful and **safe setting**, surrounded by life-long friends and nurtured by spirited role models. . . camp is infused with the best traditions and values of Conservative Judaism." (Emphasis added.)

22.     Defendant Rabbi Ethan Linden ("Linden") is a New York resident and the Director of Camp Ramah in the Berkshires. He is sued in his individual capacity.

## STATEMENT OF FACTS

### A. Camp Ramah and Linden Fail to Provide a Safe Environment For Minor Campers

23.     Camp Ramah in the Berkshires touts itself to prospective families as a "vibrant summer camp community, where children grow in a beautiful and **safe setting**, surrounded by life-long friends and nurtured by spirited role models. . . camp is infused with the best traditions and values of Conservative Judaism." (Emphasis added.)

24.     On or about July 7, 2018, when attending Camp Ramah in the Berkshires, Plaintiff, a minor teenaged female at the time, was the victim of sexual assault by a male teenaged camper, John Roe, which occurred while she was sleeping. Plaintiff awoke to find the male camper, Mr. Roe, with his hands touching her on and around the skin of the Plaintiff's genital area and his fingers inside her genitals (the "sexual assault" or the "incident").

25.     The same day of the assault, the Defendants were provided notice of the sexual assault against Ms. Doe.

5

26.     Plaintiff reported the incident to her bunk counselor, who immediately and appropriately sent her complaint up the chain of command to the *Rosh Eda* (head of camp age group).

27.     On July 14, after Plaintiff had not heard anything from the Camp officials concerning the incident, but rumors of the incident had spread throughout the Camp and among the campers, Plaintiff sought to speak with her guidance counselor.

28.     The guidance counselor, the very same day, set up a meeting between the Plaintiff and the Director of Camp Ramah in the Berkshires, Rabbi Ethan Linden.

29.     During this meeting, Rabbi Ethan Linden insisted that he would keep all of this a secret and that the camp would not tell Plaintiff's parents. Linden persuaded Plaintiff that this was the best course of action.

30.     In fact, the following day was visiting day and Plaintiff's parents were at the camp, but nobody informed Plaintiff's parents about the incident.

31.     Director Rabbi Ethan Linden did not inform Plaintiff's parents that she recently had been sexually assaulted at Camp Ramah by a male camper.

32.     During the following week, a friend of the Plaintiff at the camp went to Plaintiff's Rosh Eda questioning why nothing had been done with respect to the incident and the boy who had sexually assaulted Plaintiff. The Rosh Eda responded – incorrectly and falsely- that since Plaintiff and the boy assailant were both minors, nothing could be done.

33.     Later that same week, Plaintiff's younger sister who also was attending Camp Ramah began questioning Plaintiff about the incident and asking whether their parents knew about what had occurred. Following this conversation with her sister, Plaintiff went to speak to

6

Rabbi Ethan Linden on July 22, 2018, and explained that she had to let her parents know about the incident.

34.     In response, Camp Director Rabbi Ethan Linden explained that the boy assailant was being punished by staying in his bunk during activities and that he had been forced to speak with his guidance counselor.   Linden also told Plaintiff that if she told her parents, more people would learn about it and campers would start gossiping about it.  Linden attempted to shame Plaintiff into keeping the fact that she has been sexually assaulted a secret.  Plaintiff, however, insisted that the Camp officials call her parents and let her speak to them.

35.     On July 22, 2018, Rabbi Ethan Linden and Plaintiff's guidance counselor placed a call to Plaintiff's parents.  The call began with an off topic request by Linden for additional payment from the family so that Plaintiff and her younger sister could remain at Camp Ramah for the second session.

36.     Eventually, the Camp Ramah officials began to explain on the telephone that there was a "little incident" that they wanted to let the family know about.  Rabbi Linden sought to downplay the severity and objective offense that had occurred and indicated to Plaintiff's parents that there was a "small problem" with their daughter.  He explained that a boy touched Plaintiff, but that "nothing really happened."  This was a lie and a further attempt to cover up and down-play the sexual assault and gender-based violence against Plaintiff. Quickly, Plaintiff's father demanded to speak to Plaintiff.  However, the Camp restricted the amount of time that they allowed Plaintiff to speak to her father and then dismissed her from the office and sent her back to her bunk so the Camp officials could continue the conversation with Plaintiff's parents in the absence of Plaintiff.  The guidance counselor escorted Plaintiff back to her bunk, while Plaintiff cried uncontrollably the entire way and continued to cry uncontrollably in her bunk.

37.     Camp Director Rabbi Ethan Linden explained to Plaintiff's father that Camp Ramah did not believe this to be a big deal, and implored Plaintiff's father to let the camp handle it, and not file formal charges.

38.     Plaintiff's father was not convinced and continued to state that the incident must be reported to the appropriate authorities.  Plaintiff's father also demanded that Camp Ramah take action and remove the boy assailant from the camp immediately.

39.     Camp Director Linden refused to remove the boy assailant from camp and insisted that the camp was handling it in their own way.

40.     Eventually, Plaintiff was called to return to  Linden's office to speak with her father and with Camp Director Rabbi Ethan Linden again.

41.      Plaintiff was placed in a private room with a phone. However, the Camp Ramah officials would not allow the Plaintiff to shut the room door and therefore, listened in on her conversation even though she had requested privacy to speak with her parents.

42.     During this follow up conversation, the Plaintiff and her parents were discussing whether Plaintiff would attend a planned camp trip the following day, whether  Camp Ramah should file a police report and whether the family believed the boy assailant should remain at camp.

43.     Plaintiff and her family informed the Camp Ramah officials that Plaintiff would go on the planned camp trip and wanted the camp to follow the regulations and laws that required such an incident to be reported.  They also requested that the camp remove the boy assailant from the camp.

44.     After Plaintiff finished her phone call with her parents, and her parents reported (the decisions) on how the family wanted the camp to handle the incident and the boy assailant,

Plaintiff was going to be driven by Camp Director Rabbi Ethan Linden to the area where the entire camp was saying the final prayers for the Tish B'Av holiday.

45.     Prior to entering into the golf cart, Camp Director Rabbi Ethan Linden sought to diffuse the situation and again downplay the incident and stated to Plaintiff, in sum or substance that, "I don't really think this is that big of a deal, he [the assailant] is just a horny little boy."

46.     Upon entering the building where the entire camp was saying the final prayers for Tish B'Av, many counselors and campers approached Plaintiff offering her support and empathy.  This further harmed Plaintiff emotionally as she began to understand this incident had become common knowledge at the Camp.

47.     In the following days, Camp Director Rabbi Ethan Linden called Plaintiff's parents on multiple occasions.  Initially, Linden was urging the family not have the camp file charges.

48.     However, eventually,  Camp Ramah did let the family know that they had reported the incident  to the authorities.  One day later, Camp Director Rabbi Ethan Linden contacted Plaintiff's parents and recommended that they speak with the parents of the offending boy.  When Plaintiff's parents declined this invitation, Camp Director Rabbi Ethan Linden stated, "Off the record, if you plan on bringing any legal charges against the family, they have already let me know they will sue you and it will be a big legal mess."

49.     Plaintiff's parents contacted the authorities concerning the sexual assault on their minor daughter at Camp Ramah.  Plaintiff's parents were told, in sum or substance, by local law enforcement that this was not the first time the police had received such a report from Camp Ramah and that sexual assault and gender based violence against minors was an ongoing

problem at Camp Ramah in the Berkshires, which Defendant Camp Ramah had not taken any response to cure.

50.     Sometime thereafter, a police investigator was dispatched to Camp Ramah and reported that the male camper who sexually assaulted Plaintiff had been attending the Camp a full month after the assault.  The police directed Camp Ramah to remove the male camper, but again, Camp Ramah refused, thus continuing to make Plaintiff vulnerable to assault and continuing to deprive her of the same educational opportunities of other campers, including the male assailant.

51.     Indeed, it was only after the police investigator was dispatched a second time to Camp Ramah that the offending male camper was removed.  Camp Ramah's decision to permit the offending male camper to remain at Camp Ramah for approximately one month after the sexual assault was reported caused significant emotional distress to Plaintiff.

52.     The police investigation, which Camp Ramah and Linden repeatedly failed to initiate and sought to avoid, led to the arrest of the male camper, on the charge of Forcible Touching under the New York Penal Code § 130.52, which provides, in relevant part:

> A person is guilty of forcible touching when such person intentionally, and for no legitimate purpose:
>
> 1. forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire;

53.     A criminal case against the male camper was commenced  in Family Court in Poughkeepsie, New York

54.     Once the summer camp term had concluded, Plaintiff and her parents met with local law enforcement and were interviewed.

10

55.     In responding to this report of a sexual assault against Ms. Doe, the Defendants, Camp Ramah and Linden, abandoned all rules of professional conduct and best practices, and by their response, further jeopardized the safety and well-being of Plaintiff.

56.     Despite having actual knowledge of the sexual assault of a minor camper, Camp Ramah and Linden acted with deliberate indifference and failed to follow standard camp protocol, as set forth by the American Camp Association, which requires, *inter alia*, that incidents of sexual abuse be reported to the authorities promptly for investigation, that the perpetrator be isolated or removed, and that the family of the victim be informed immediately.

57.     The American Camp Association provides that a camp's priority is "to protect the well-being of children in its care.  This priority includes a camp's endeavor to manage and minimize the risk of child abuse occurring 'on its watch' and to sensitively and appropriately report and handle claims of abuse."  See https://www.acacamps.org/resource-library/articles/child-sexual-abuse-liability-issues-revisited.  When a camp suspects, or as here-has actual knowledge that, a camper is the victim of abuse, the camp is required to report the incident immediately to the authorities, to isolate and remove the alleged perpetrator, and contact the family (or families) involved. See https://www.acacamps.org/resource-library/articles/child-sexual-abuse-liability-issues-revisited.

58.     Rather than follow the American Camp Association standard protocol (the "Protocol"), Linden attempted to cover up the incident.  During a meeting with the victim, Rabbi Linden instructed Plaintiff **not** to report the incident to her parents.

59.     In a showing of discrimination against this minor female, Linden attempted to convince the victim that the assault which she endured, criminally defined as when another "forcibly touches the sexual or other intimate parts of another person for the purpose of

degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire" was no big deal. In a setting where Defendant Camp Ramah and Defendant Rabbi Linden exercised substantial control over the Plaintiff and the male assailant, Defendant Linden sought to excuse the objectively offensive conduct by telling the Plaintiff that the male camper who assaulted her was "just some horny boy."

60.    By failing to follow standard protocol and by allowing the male assailant to remain at the Camp for an entire month after the sexual assault on Plaintiff, Defendants left Plaintiff potentially vulnerable to another assault, and deprived Plaintiff of educational opportunities that other individuals at Camp Ramah had access to, including the male assailant. Because of the extreme humiliation, embarrassment and dread Plaintiff felt in the days and weeks following the sexual assault, and the necessity of avoiding her assailant who remained at the Camp, Plaintiff did not attend numerous educational classes that she previously had attended at the Camp prior to the sexual assault, including Jewish cultural and heritage studies, sewing class, cooking class, volleyball training and swim instruction. Plaintiff, moreover, experienced a depression following the sexual assault and no longer was able to enjoy many of the activities she previously had enjoyed at the Camp.

61.    Camp Ramah and Linden made the deliberate decision to do nothing to protect Ms. Doe and acted with deliberate indifference to known acts of discrimination, retaliation, sexual assault, gender-based violence, and harassment against Ms. Doe. Camp Ramah and Linden's do-nothing approach condoned further discrimination and harassment against Ms. Doe.

62.    In sum, Defendants grossly neglected their duties to provide a safe environment for campers and supervise campers, for whom they exercised substantial control of the campers' activities and movements every day, failed to take reasonable measures to protect its campers

from a history of inappropriate and improper sexual incidents and gender based violence that had occurred at Camp Ramah and acted with deliberate indifference in responding to the sexual assault suffered by Plaintiff in the summer 2018.

63.     The Ramah Commission was put on notice of the sexual assault of Plaintiff no later than January 2019, and was made aware, or should have been made aware, by Camp Ramah at an earlier date, but upon information and belief, also has failed to take corrective action. Indeed, the Ramah Commission and Camp Ramah have allowed Defendant Linden to remain the Director of Camp Ramah. Camp Ramah, moreover, falsely touts on its website that "Ethan [Linden] believes that camp should be a safe, fun and ultimately transformative experience for campers," see https://www.ramahberkshires.org/staff, when it knows, or reasonably should know, that Defendant Linden has blatantly disregarded the safety of minor campers in his care and has fostered an environment where sexual assault on minors by minors is tolerated.

64.     Defendants have refused to take responsibility or to take any type of preventative or corrective action, instead choosing to allow and propel sexual assault against minors. Defendants have acted with deliberate indifference to these known acts of gender-based violence and discrimination.


IV.     **CLAIMS FOR RELIEF**

**COUNT ONE**
**Violation of Title IX – 20 U.S.C. § 1681(a)**
(Discrimination in Violation of Title IX of the Education Amendments – Disparate Treatment)
(Against The Ramah Commission and Camp Ramah)

65.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 64 as if fully set forth herein.

66.     The Ramah Commission and Camp Ramah are Title IX funding recipients.

67.     Plaintiff attended Camp Ramah in the Berkshires in July and August 2018.

68.     While attending Camp Ramah in the Berkshires on or around  July 7,  2018, Jane Doe was subjected to sexual assault by a male camper, John Roe.

69.     On that same day, on or around July 7, 2018, fearing for her safety, Jane Doe reported John Roe's abusive acts of sexual assault to Camp Ramah and Rabbi Linden.

70.     In response to learning that Plaintiff had been subjected to sexual assault and had reported this violence to Camp Ramah and Rabbi Linden in accordance with her rights under Title IX, Linden instructed her to keep quiet and not inform her parents.

71.     Moreover, in violation of the standard Protocol, Camp Ramah failed to report the sexual assault to law enforcement, failed to inform Plaintiff's parents, and failed to remove the perpetrator from camp premises.  Instead, Camp Ramah permitted the perpetrator to remain at camp for one month following the assault, when law enforcement contacted by Plaintiff's parents ordered his removal from Camp Ramah.

72.     By requesting Jane Doe's silence after she disclosed that she was a victim of sexual violence and/or failing to follow the standard Protocol, Defendants violated her right to an educational environment free from sex discrimination under Title IX.

73.     Educational institutions, including the Ramah Commission and Camp Ramah, are liable under Title IX for gender discrimination in their programs and activities and are thus not permitted to "[s]ubject any person to separate or different rules of behavior, sanctions, or other treatment" on the basis of sex.

74.     Camp Ramah subjected Ms. Doe to different rules of behavior and different sanctions on the basis of her sex, because she reported that she was a victim of gender-based violence and sexual assault.

75.     As a result of the meeting with Linden, Ms. Doe faced discrimination so severe, pervasive, and objectively offensive that Plaintiff was deprived of access to educational opportunities or benefits provided by Camp Ramah and its educational program, and the response of Linden amplified these effects and further deprived Plaintiff of educational opportunities.

76.     As a direct and proximate result of Camp Ramah's unlawful acts and its violations of Title IX, Plaintiff was denied or limited in her ability to participate in or benefit from Camp Ramah's educational programs or activities on the basis of sex.

77.     As a direct and proximate result, Plaintiff continues to suffer damages, including but not limited to, lost educational benefits and opportunities, emotional pain and trauma, and the loss of enjoyment of her life.

**COUNT TWO**
**Violation of Title IX – 20 U.S.C. § 1681(a)**
(Discrimination in Violation of Title IX of the Education Amendments – Hostile Environment)
(Against The Ramah Commission and Camp Ramah)

78.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 77 as if fully set forth herein.

79.     The Ramah Commission and Camp Ramah are Title IX funding recipients.

80.     The response of the Ramah Commission and Camp Ramah to Plaintiff's report of sexual assault, including directing Plaintiff to keep quiet about the assault, failing to follow the standard Protocol, failing to inform law enforcement, permitting the perpetrator of the sexual assault to remain at Camp Ramah, and failing to take other corrective action, including removing Linden as Director of Camp Ramah, has amplified the hostile environment at Camp Ramah and further deprived Plaintiff of educational opportunities.

81.     Ms. Doe was subjected to sexual violence at Camp Ramah on the basis of her gender. Ms. Doe reported these events to the appropriate persons with the power to remedy the gender-based discrimination and violence that she faced, but Camp Ramah took no action.

82.     As a direct and proximate result, Plaintiff continues to suffer damages, including but not limited to, lost educational benefits and opportunities, emotional pain and trauma, and the loss of enjoyment of her life.

**COUNT THREE**
**Violation of Title IX – 20 U.S.C. § 1681(a)**
(Retaliation in Violation of Title IX of the Education Amendments)
(Against the Ramah Committee and Camp Ramah)

83.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 82 as if fully set forth herein.

84.     Plaintiff's report of sexual and gender based violence constituted protected activity under Title IX.

85.     The Ramah Committee and Camp Ramah were informed and had knowledge that Plaintiff had been sexually assaulted by John Roe. They knew her ongoing fear for her safety.

86.     The Ramah Commission and/or Camp Ramah took adverse action against Plaintiff by (i) instructing Plaintiff to keep quiet about her sexual assault; (ii) failing to report the sexual assault to law enforcement; (iii)  failing to follow standard Protocol; (iv) failing to remove the perpetrator of the sexual assault from Camp Ramah; and (v) failing to remove Linden as Director of Camp Ramah, and thus, has caused Plaintiff to suffer further harassment and ridicule, as well as emotional trauma and lost educational opportunities.

87.     Because Plaintiff engaged in the statutorily protected activity of reporting gender-based violence perpetrated against her, the Ramah Commission and Camp Ramah took adverse

actions against her in instructing her to keep silent and/or failing to following the standard Protocol and/or failing to remove Linden as Director of Camp Ramah.

88.     Ms. Doe informed Camp Ramah of the gender discrimination and retaliation that Ms. Doe faced, but the Defendants acted with deliberate indifference to these illegal acts.

89.     These discriminatory and illegal actions send a message to Plaintiff and all members of Camp Ramah that students will face undesirable consequences for exercising their rights under Title IX and taking measures to protect themselves from gender-based violence.

90.     Ms. Doe suffered an adverse action because of her protected activity. Had she not informed Defendants of her sexual assault, she would not have been instructed and shamed by Linden to keep quiet and that this was just "some horny boy", and she would not have suffered the feelings of ongoing fear of further sexual assault, abandonment, worthlessness and humiliation.

91.     As a direct and proximate cause of the Ramah Committee and Camp Ramah's unlawful acts and its violations of Title IX, Plaintiff continues to suffer damages, including but not limited to lost educational benefits and opportunities and emotional pain and trauma.

## COUNT THREE
### Violation of the NYSHRL
(Against Camp Ramah)

92.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 91 as if fully set forth herein.

93.     Camp Ramah is a provider of public accommodations within the meaning of the NYSHRL.

94.     Plaintiff was denied full and equal enjoyment of an educational opportunity while attending Camp Ramah on account of gender based violence, sexual assault, and sex discrimination.  This occurred when Camp Ramah perpetuated an unsafe and hostile

environment which fostered gender based violence and which failed to investigate Plaintiff's complaints of gender based violence, failed to take corrective action, failed to report Plaintiff's sexual assault to law enforcement, failed to remove the perpetrator of the sexual assault promptly from the camp premises, and instructed Plaintiff to keep silent and not inform her parents that she had been sexually assaulted.

95.     As a result of Camp Ramah's intentional and willful refusal to investigate Plaintiff's complaints about gender based violence and sexual assault, its intentional and willful attempt to cover up Plaintiff's sexual assault by instructing Plaintiff not to tell her parents and failing to inform law enforcement, and by failing to remove Mr. Roe promptly from the camp premises in accordance the Protocol, Camp Ramah has caused Plaintiff to suffer and continue to suffer harm and emotional damages.

## COUNT FOUR
## NEGLIGENCE
(Against All Defendants)

96.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 95 as if fully set forth herein.

97.     Plaintiff attended Camp Ramah in July and August 2018.

98.     Defendants owed Plaintiff a duty of care, including providing a safe environment for minor campers and providing supervision of minor campers.

99.     Defendants breached their duty of care by failing to provide a safe environment for minors and failing to properly supervise minors attending Camp Ramah.

100.    Defendants knew Plaintiff was sexually assaulted and failed to take corrective action and otherwise make the environment safe. Instead, Defendants breached their duty of care

by punishing Plaintiff when she reported that she had been a victim of sexual violence at Camp Ramah at the hands of a minor male camper and reported the incident to Camp Ramah and Linden so that they would protect her safety and rights under Title IX.

101.    Defendants further breached their duty of care by instructing Plaintiff to keep quiet, and not tell her parents, about her assault and telling her that her assailant was "just some horny boy," failing to follow the Protocol, failing to report Mr. Roe's behavior to law enforcement, and permitting Mr. Roe to remain at camp, and failing to remove Linder as the Director of Camp Ramah, all of which foreseeably caused Ms. Doe further harm.

102.    Camp Ramah, which accepts financial dues from the families of campers in exchange for their attendance at the camp, and which promises to enrich and protect its members through, *inter alia*, maintaining safe facilities for children and facilitating the development of healthy relationships, owed Plaintiff a duty of care.

103.    Camp Ramah breached its duty of care toward Plaintiff and her family by failing to uphold its promise to keep its minor campers safe and to educate campers regarding sexual assault.  Camp Ramah and Linden failed to enforce the policies, practices, and promises made to its families and campers pertaining to non-discrimination, reasonable safety and the handling of misconduct. It failed to do so causing foreseeable harm to Plaintiff.

104.    Camp Ramah and the Ramah Committee breached their duty of care toward Plaintiff and her family by failing to investigate, discipline, reprimand, or otherwise address conduct that harmed Plaintiff and violated the Protocol.

105.    The Protocol sets forth that a camp's priority is "to protect the well-being of children in its care.  This priority includes a camp's endeavor to manage and minimize the risk of child abuse occurring 'on its watch' and to sensitively and appropriately report and handle claims

of abuse." See https://www.acacamps.org/resource-library/articles/child-sexual-abuse-liability-issues-revisited. When a camp suspects, or as here- has actual knowledge that, a camper is the victim of abuse, the camp is required to report the incident immediately to the authorities, to isolate and remove the alleged perpetrator, and contact the family (or families) involved. See https://www.acacamps.org/resource-library/articles/child-sexual-abuse-liability-issues-revisited.

106.    Plaintiff brings each and every claim permissible under New York law for her injuries and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under New York law, including but not limited to: personal injuries; past, present and future pain and suffering; past, present and future medical expenses; disability; mental anguish; loss of the capacity for the enjoyment of life; incidental expenses; permanent injuries; and consequential damages to be proven at trial.

107.    As a direct and proximate result of this negligence, Plaintiff suffered and continues to suffer humiliation and emotional distress.

### COUNT FIVE
### Negligent Security and Supervision
### (Against All Defendants)

108.    Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 107 as if fully set forth herein.

109.    Defendants had a duty to take reasonable steps to protect Plaintiff, a child in their care, from foreseeable harm which she was under the supervision, and in the care, custody and control, of Defendants.

110.    Defendant Linden negligently supervised Plaintiff and the minor campers entrusted in his care at Camp Ramah.

111.    Camp Ramah and the Ramah Committee negligently trained and supervised Linden and negligently retained him in the role of Director at Camp Ramah, even after Ms. Doe had made complaints to Camp Ramah and the Ramah Committee about Linden's conduct.

112.    Defendants were aware that Plaintiff had been subject to sexual assault by Mr. Roe at Camp Ramah.

113.    It was foreseeable that instructing Plaintiff to remain silent about the sexual assault, permitting Mr. Roe to remain at Camp Ramah, thus making Plaintiff vulnerable to future assault, and failing to inform Plaintiff's parents and the authorities about the sexual assault was discriminatory and illegal and would result in considerable emotional harm to Plaintiff. Furthermore, it was foreseeable that failing to address and seek treatment for the sexual assault on Plaintiff and permitting Mr. Roe to remain at Camp Ramah would lead to considerable emotional harm to Plaintiff.

114.    Defendants committed intentional or negligent acts or omissions which resulted in Plaintiff suffering physical, psychological and other injuries and conditions as a direct and proximate result of conduct which constitutes a sexual offense committed against a child less than eighteen years of age, as defined in Article 130 of the New York Penal Law.

115.    It is hereby alleged pursuant to C.P.L.R. § 1603 that the foregoing cause of action is exempt from the operation of C.P.L.R. § 1602, including but not limited to C.P.L.R. § 1602(7).

116.    As a direct and proximate result of this negligence, Plaintiff suffered and continues to suffer humiliation and emotional distress.

### COUNT FIVE
### INTENTIONAL INFLICTION OF EMOTION DISTRESS
(Against Camp Ramah and Linden)

117.   Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 116 as if fully set forth herein.

118.   As described above, (i) the conduct of Camp Ramah and Linden in failing to follow the Protocol when informed of the sexual assault against Plaintiff, and (ii) Linden's attempt to cover up and hush the sexual assault, including (a) directing Plaintiff not to inform her parents that she was sexually assaulted at Camp Ramah, (b) shamefully downplaying the seriousness of the sexual assault by telling Plaintiff that this was "just some horny boy", and (c) telling Plaintiff's mother several weeks after the sexual assault that there was "a small problem" with her daughter, all of which occurred at a time of Plaintiff's great vulnerability, was intentional and reckless and in knowing disregard of Plaintiff's rights.

119.   In addition, Camp Ramah and Linden deliberately failed to remove the sexual perpetrator from Camp Ramah, even when initially ordered to do so by law enforcement.  It was only after a police officer came to Camp Ramah to investigate the crime that the offender was sent home from Camp Ramah.

120.   As described above, the conduct of Camp Ramah and Linden was extreme and outrageous, and beyond the bounds of decency.

121.   The Defendants were intentional and reckless in the acts and omissions that ignored Plaintiff's request for assistance.

122.   The Defendants either intended to cause or disregarded the substantial probability of causing Plaintiff severe emotional distress.

123.   The conduct of Camp Ramah and Linden caused severe emotional distress to Plaintiff.

124.     Plaintiff brings each and every claim permissible under New York law for her injuries and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under New York law, including but not limited to: personal injuries; past, present and future pain and suffering; past, present and future medical expenses; disability; mental anguish; loss of the capacity for the enjoyment of life; incidental expenses; permanent injuries; and consequential damages to be proven at trial.

125.     As a direct and proximate result of the conduct of Camp Ramah and Linden, Plaintiff did suffer severe emotional distress.

**COUNT SIX**
**NEGLIGENT INFLICTION OF EMOTION DISTRESS**
(Against Camp Ramah and Linden)

126.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 125 as if fully set forth herein.

127.     Camp Ramah and Linden owed Plaintiff, as a minor camper in their custody, control and care in July and August 2018, a duty of care to supervise and provide a safe environment.  Camp Ramah and Linden, moreover, owed Plaintiff a duty of care to follow the Protocol.

128.     Camp Ramah and Linden breached their duty of care to Plaintiff in failing to follow the Protocol when informed of the sexual assault against Plaintiff.   In addition, Linden breached his duty of care to Plaintiff by his attempt to cover up and hush the sexual assault, including (a) directing Plaintiff not to inform her parents that she was sexually assaulted at Camp Ramah, (b) shamefully downplaying the seriousness of the sexual assault by telling Plaintiff that this was "just some horny boy", and (c) telling Plaintiff's mother several weeks after the sexual

23

assault that there was just "a small problem" with her daughter, all of which occurred at a time of Plaintiff's great vulnerability, was intentional and reckless and in knowing disregard of Plaintiff's rights.

129.    As described above, the conduct of Camp Ramah and Linden was extreme and outrageous, and beyond the bounds of decency.

130.    The conduct of Camp Ramah and Linden caused severe emotional distress to Plaintiff.

131.    The Defendants were intentional and reckless in the acts and omissions that ignored Plaintiff's request for assistance.

132.    As a direct and proximate result of the conduct of Camp Ramah and Linden, Plaintiff did suffer severe emotional distress.

**COUNT SEVEN**
**BREACH OF CONTRACT**
(Against All Defendants)

133.    Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 132 as if fully set forth herein.

134.    Plaintiff attended Camp Ramah in July and August 2018.

135.    Prior to attending Camp Ramah, Defendants entered a contract with the parents of the Plaintiff, in which the Plaintiff was an intended third-party beneficiary.

136.    In the agreement with the parents, the Camp had agreed to provide a safe environment for minor campers and supervise minor campers.

137.    Camp Ramah, which requires the payment of financial dues, consideration, from the families of campers in exchange for their attendance at the camp, makes promises that

include to enrich and protect Plaintiff through, *inter alia*, maintaining safe facilities for children and facilitating the development of healthy relationships.

138.    Further, Defendants agreed to keep the parents of the Plaintiff informed of all relevant information concerning their minor daughter while at Camp Ramah.

139.    Defendants breached this agreement, in which Plaintiff was an intended third-party beneficiary, by failing to provide a safe environment for minors and failing to properly supervise minors, including Plaintiff, attending Camp Ramah.

140.    Defendants further breached their agreement, in which Plaintiff was an intended third-party beneficiary, by not informing the parents of the sexual assault suffered by their minor daughter in the hours, days and weeks after it occurred, despite having actual knowledge of the incident.

141.    Defendants further breached their agreement, in which Plaintiff was a third-party beneficiary, by punishing Plaintiff when she reported that she had been a victim of sexual violence at Camp Ramah at the hands of a minor male camper and reported the incident to Camp Ramah and Linden so that they would protect her safety and rights.

142.    Defendants further breached their agreement, for which Plaintiff was a third-party beneficiary,  by instructing Plaintiff to keep quiet, and not tell her parents, about her assault and telling her that her assailant was "just some horny boy," failing to follow the Protocol, failing to report Mr. Roe's behavior to law enforcement, and permitting Mr. Roe to remain at camp, and failing to remove Linden as the Director of Camp Ramah, all of which are part and parcel of providing a safe environment for Ms. Doe and keeping her parents informed of all relevant and important information concerning her time at Camp Ramah.

143.    Plaintiff and her parents relied on the good faith of Defendant and the agreements and promises made by the Defendants when making a decision about which camp the Plaintiff would attend.

144.    The Defendants breached their agreement, in which Plaintiff was an intended third-party beneficiary, with Plaintiff and her parents.

145.    As a direct and proximate result of the breach of this agreement, Plaintiff and her parents suffered harm and damages in an amount to be determined by a jury at trial.

<u>**COUNT EIGHT**</u>
**PROMISSORY ESTOPPEL**
(Against All Defendants
In the alternative to the Breach of Contract Claim)

146.    Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 145 as if fully set forth herein.

147.    Plaintiff attended Camp Ramah in July and August 2018.

148.    Prior to attending Camp Ramah, Defendants had promised to Plaintiff and her parents that they would provide a safe environment for minor campers and supervise minor campers.

149.    Camp Ramah, which accepts financial dues from the families of campers in exchange for their attendance at the camp, promised to enrich and protect Plaintiff by, *inter alia*, maintaining safe facilities for children and facilitating the development of healthy relationships.

150.    Defendants broke this promise by failing to provide a safe environment for minors and failing to properly supervise minors, including Plaintiff, attending Camp Ramah.

151.    Further, Defendants promised to keep the parents of the Plaintiff informed of all relevant information concerning their minor daughter while at Camp Ramah.

152.    Defendants broke their second promise by not informing the parents of the sexual assault suffered by their minor daughter in the hours, days and weeks after it occurred, despite having actual knowledge of the incident.

153.    Defendants further broke this promise by punishing Plaintiff when she reported that she had been a victim of sexual violence at Camp Ramah at the hands of a minor male camper and reported the incident to Camp Ramah and Linden so that they would protect her safety and rights.

154.    Defendants further broke their promises to Plaintiff and her parents by instructing Plaintiff to keep quiet, and not tell her parents, about her assault and telling her that her assailant was "just some horny boy," failing to follow the Protocol, failing to report Mr. Roe's behavior to law enforcement, and permitting Mr. Roe to remain at camp, and failing to remove Linden as the Director of Camp Ramah, all of which are part and parcel of providing a safe environment for Ms. Doe and keeping her parents informed of all relevant and important information concerning her time at Camp Ramah.

155.    Plaintiff and her parents relied on the promises of the Defendants when making a decision about which camp the Plaintiff would attend.

156.    The Defendants broke their promises to Plaintiff and her parents.

157.    Defendant should be estopped from denying that such a promise was made and is enforceable.

158.    As a direct and proximate result of the breach of these promises, Plaintiff suffered harm and damages in an amount to be determined by a jury at trial.

## DEMAND FOR RELIEF

**WHEREFORE**, the Plaintiff requests that this Court:

A.    Issue a Declaratory Judgment against the Defendants Camp Ramah and the Ramah Commission that they violated Title IX and applicable laws in their conduct toward Plaintiff;

B.    Issue an Order and Injunction directing the Defendants Camp Ramah and the Ramah Commission to remedy their policies and practices to comply with Title IX and the Protocol;

C.    Award Plaintiff economic and consequential damages for harm caused by Defendants Camp Ramah and the Ramah Commission's discriminatory and retaliatory conduct and harassment in violation of Title IX and the Protocol, in an amount to be proven at trial;

D.    Award Plaintiff compensatory damages for pain and suffering as it relates to Defendants' Camp Ramah and the Ramah Commission's discriminatory conduct and harassment in violation of Title IX and the Protocol in an amount to be proven at trial;

E.    Award Plaintiff damages for Defendants Camp Ramah and the Ramah Commission's willful or wanton negligence, or recklessness, or conscious disregard of Plaintiff's legal rights under Title IX;

F.    Award Plaintiff damages for Camp Ramah and Linden's negligence, intentional infliction of emotional distress and/or negligent infliction of emotional distress;

G.    Award Plaintiff damages for Defendants' negligent security and supervision;

H.    Award Plaintiff damages for Defendants' breach of Contract, or in the alternative, damages pursuant to the claim of promissory estoppel;

28

          I.      Award Plaintiff punitive damages due to the Defendants' entire want of care that would raise the presumption of conscious indifference to consequences. The Defendants' conduct involved malice, oppression, insult, wanton disregard, and/or reckless disregard of Plaintiff's rights. Punitive damages are needed to protect the public from similar acts and deter the defendant going forward;

          J.      Award Plaintiff reasonable attorneys' fees and costs expended in litigating this matter; and

          K.      Award to Plaintiff such other relief as is deemed just and proper by this Court.

## JURY DEMAND

          Plaintiff demands a trial by jury of all issues so triable.

Dated:      New York, New York
            May 4, 2022

                                      Wylie Stecklow PLLC

                                        Wylie M. Stecklow
                                        Carnegie Hall Tower
                                        152 W. 57th Street, 8th Floor
                                        New York, New York 10019
                                        Tel: (212) 566-8000 x 3
                                        Fax: (212) 202-4952
                                        ECF@WylieLAW.com

                                        Giskan Solotaroff & Anderson LLP
                                        Catherine E. Anderson
                                        90 Broad St., 2nd Floor
                                        New York, New York 10004
                                        (212) 847-8315
                                        canderson@gslawny.com