IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, | CIVIL ACTION NO.: |
| Plaintiff, | |
| v. | DEMAND FOR JURY TRIAL |
| THE NATIONAL RAMAH COMMISSION, INC., CAMP RAMAH IN THE BERKSHIRES, INC., and RABBI ETHAN LINDEN, in his individual capacity, | |
| Defendants. | |

# COMPLAINT

Plaintiff Jane Doe,[1] by and through her undersigned counsel, brings this Complaint against Defendants The National Ramah Commission, Inc. ("Ramah Commission"), Camp Ramah in the Berkshires, Inc. ("Camp Ramah") (together with the Ramah Commission, "Ramah"), and Rabbi Ethan Linden ("Linden"), in his individual capacity (collectively, "Defendants"), for damages and injunctive relief under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"), the New York State Human Rights Law ("NYSHRL"), negligence and negligent supervision under New York common law, and other related claims.

### I.   PRELIMINARY STATEMENT

---

[1] Jane Doe is a pseudonym for Plaintiff's true name. Plaintiff's identity has been protected because she was a minor during the time of the underlying incident and due to the sensitive nature of the facts of this case. Plaintiff's identity is known to Defendants.

8. Unfortunately, this was not an isolated incident. There is a history of improper and inappropriate sexual incidents against female campers at Camp Ramah during the time that Defendant Linden was the Director of this camp. Further deliberate indifference by Camp Ramah and Linden can be seen by the history of improper and inappropriate sexual incident at this Camp that did not lead to any changes to provide protection for the minors entrusted to this Camp by their parents.

9. Further deliberate indifference by Camp Ramah and Linden are seen by their attempt to cover up the incident involving Ms. Doe, and ensure that the parents of the Plaintiff did not learn of the incident in a timely fashion.

10. This cover-up included Linden instructing Plaintiff not to tell her parents that she had been the victim of sexual assault.

11. This cover-up included Camp Ramah and Linden permitting the perpetrator to remain at camp and in Plaintiff's presence.

12. This cover-up included failing to inform Ms. Doe's parents of this incident in the hours and days after it occurred.

13. Camp Ramah and Linden should have supported Plaintiff and provided her with a safe environment, including an environment free from her perpetrator, therapeutic counseling and guidance. Instead, Ms. Doe fell victim to the Defendants' discriminatory bias toward victims of gender-based sexual assault and as a result, in clear violation of her rights under Title IX, she suffered and continues to suffer damages, including humiliation and emotional trauma.

14. The sexual assault which Plaintiff experienced at Camp Ramah, coupled with Camp Ramah's and Linden's indifference towards Plaintiff and their protection of the perpetrator, terrified Plaintiff and had an impact on her mental health and wellbeing.

21.     Defendant Camp Ramah in the Berkshires, Inc., ("Camp Ramah"), located in Wingdale, New York, is a residential summer camp for youths. Camp Ramah purports to educate children in the traditions, history and values of Judaism and receives federal funding for various educational programs. Camp Ramah touts itself to prospective families as a "vibrant summer camp community, where children grow in a beautiful and **safe setting**, surrounded by life-long friends and nurtured by spirited role models. . . camp is infused with the best traditions and values of Conservative Judaism." (Emphasis added.)

22.     Defendant Rabbi Ethan Linden ("Linden") is a New York resident and the Director of Camp Ramah in the Berkshires. He is sued in his individual capacity.

## STATEMENT OF FACTS

### A. Camp Ramah and Linden Fail to Provide a Safe Environment For Minor Campers

23.     Camp Ramah in the Berkshires touts itself to prospective families as a "vibrant summer camp community, where children grow in a beautiful and **safe setting**, surrounded by life-long friends and nurtured by spirited role models. . . camp is infused with the best traditions and values of Conservative Judaism." (Emphasis added.)

24.     On or about July 7, 2018, when attending Camp Ramah in the Berkshires, Plaintiff, a minor teenaged female at the time, was the victim of sexual assault by a male teenaged camper, John Roe, which occurred while she was sleeping. Plaintiff awoke to find the male camper, Mr. Roe, with his hands touching her on and around the skin of the Plaintiff's genital area and his fingers inside her genitals (the "sexual assault" or the "incident").

25.     The same day of the assault, the Defendants were provided notice of the sexual assault against Ms. Doe.

5

Rabbi Ethan Linden on July 22, 2018, and explained that she had to let her parents know about the incident.

34.     In response, Camp Director Rabbi Ethan Linden explained that the boy assailant was being punished by staying in his bunk during activities and that he had been forced to speak with his guidance counselor. Linden also told Plaintiff that if she told her parents, more people would learn about it and campers would start gossiping about it. Linden attempted to shame Plaintiff into keeping the fact that she has been sexually assaulted a secret. Plaintiff, however, insisted that the Camp officials call her parents and let her speak to them.

35.     On July 22, 2018, Rabbi Ethan Linden and Plaintiff's guidance counselor placed a call to Plaintiff's parents. The call began with an off topic request by Linden for additional payment from the family so that Plaintiff and her younger sister could remain at Camp Ramah for the second session.

36.     Eventually, the Camp Ramah officials began to explain on the telephone that there was a "little incident" that they wanted to let the family know about. Rabbi Linden sought to downplay the severity and objective offense that had occurred and indicated to Plaintiff's parents that there was a "small problem" with their daughter. He explained that a boy touched Plaintiff, but that "nothing really happened." This was a lie and a further attempt to cover up and down-play the sexual assault and gender-based violence against Plaintiff. Quickly, Plaintiff's father demanded to speak to Plaintiff. However, the Camp restricted the amount of time that they allowed Plaintiff to speak to her father and then dismissed her from the office and sent her back to her bunk so the Camp officials could continue the conversation with Plaintiff's parents in the absence of Plaintiff. The guidance counselor escorted Plaintiff back to her bunk, while Plaintiff cried uncontrollably the entire way and continued to cry uncontrollably in her bunk.

7

Plaintiff was going to be driven by Camp Director Rabbi Ethan Linden to the area where the entire camp was saying the final prayers for the Tish B'Av holiday.

45. Prior to entering into the golf cart, Camp Director Rabbi Ehtan Linden sought to diffuse the situation and again downplay the incident and stated to Plaintiff, in sum or substance that, "I don't really think this is that big of a deal, he [the assailant] is just a horny little boy."

46. Upon entering the building where the entire camp was saying the final prayers for Tish B'Av, many counselors and campers approached Plaintiff offering her support and empathy. This further harmed Plaintiff emotionally as she began to understand this incident had become common knowledge at the Camp.

47. In the following days, Camp Director Rabbi Ethan Linden called Plaintiff's parents on multiple occasions. Initially, Linden was urging the family not have the camp file charges.

48. However, eventually, Camp Ramah did let the family know that they had reported the incident to the authorities. One day later, Camp Director Rabbi Ethan Linden contacted Plaintiff's parents and recommended that they speak with the parents of the offending boy. When Plaintiff's parents declined this invitation, Camp Director Rabbi Ethan Linden stated, "Off the record, if you plan on bringing any legal charges against the family, they have already let me know they will sue you and it will be a big legal mess."

49. Plaintiff's parents contacted the authorities concerning the sexual assault on their minor daughter at Camp Ramah. Plaintiff's parents were told, in sum or substance, by local law enforcement that this was not the first time the police had received such a report from Camp Ramah and that sexual assault and gender based violence against minors was an ongoing

9

55. In responding to this report of a sexual assault against Ms. Doe, the Defendants, Camp Ramah and Linden, abandoned all rules of professional conduct and best practices, and by their response, further jeopardized the safety and well-being of Plaintiff.

56. Despite having actual knowledge of the sexual assault of a minor camper, Camp Ramah and Linden acted with deliberate indifference and failed to follow standard camp protocol, as set forth by the American Camp Association, which requires, *inter alia*, that incidents of sexual abuse be reported to the authorities promptly for investigation, that the perpetrator be isolated or removed, and that the family of the victim be informed immediately.

57. The American Camp Association provides that a camp's priority is "to protect the well-being of children in its care. This priority includes a camp's endeavor to manage and minimize the risk of child abuse occurring 'on its watch' and to sensitively and appropriately report and handle claims of abuse." See https://www.acacamps.org/resource-library/articles/child-sexual-abuse-liability-issues-revisited. When a camp suspects, or as here- has actual knowledge that, a camper is the victim of abuse, the camp is required to report the incident immediately to the authorities, to isolate and remove the alleged perpetrator, and contact the family (or families) involved. See https://www.acacamps.org/resource-library/articles/child-sexual-abuse-liability-issues-revisited.

58. Rather than follow the American Camp Association standard protocol (the "Protocol"), Linden attempted to cover up the incident. During a meeting with the victim, Rabbi Linden instructed Plaintiff **not** to report the incident to her parents.

59. In a showing of discrimination against this minor female, Linden attempted to convince the victim that the assault which she endured, criminally defined as when another "forcibly touches the sexual or other intimate parts of another person for the purpose of

11

from a history of inappropriate and improper sexual incidents and gender based violence that had occurred at Camp Ramah and acted with deliberate indifference in responding to the sexual assault suffered by Plaintiff in the summer 2018.

63. The Ramah Commission was put on notice of the sexual assault of Plaintiff no later than January 2019, and was made aware, or should have been made aware, by Camp Ramah at an earlier date, but upon information and belief, also has failed to take corrective action. Indeed, the Ramah Commission and Camp Ramah have allowed Defendant Linden to remain the Director of Camp Ramah. Camp Ramah, moreover, falsely touts on its website that "Ethan [Linden] believes that camp should be a safe, fun and ultimately transformative experience for campers," see https://www.ramahberkshires.org/staff, when it knows, or reasonably should know, that Defendant Linden has blatantly disregarded the safety of minor campers in his care and has fostered an environment where sexual assault on minors by minors is tolerated.

64. Defendants have refused to take responsibility or to take any type of preventative or corrective action, instead choosing to allow and propel sexual assault against minors. Defendants have acted with deliberate indifference to these known acts of gender-based violence and discrimination.

## IV. CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Title IX – 20 U.S.C. § 1681(a)
(Discrimination in Violation of Title IX of the Education Amendments – Disparate Treatment)
(Against The Ramah Commission and Camp Ramah)

65. Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 64 as if fully set forth herein.

66. The Ramah Commission and Camp Ramah are Title IX funding recipients.

13

75.     As a result of the meeting with Linden, Ms. Doe faced discrimination so severe, pervasive, and objectively offensive that Plaintiff was deprived of access to educational opportunities or benefits provided by Camp Ramah and its educational program, and the response of Linden amplified these effects and further deprived Plaintiff of educational opportunities.

76.     As a direct and proximate result of Camp Ramah's unlawful acts and its violations of Title IX, Plaintiff was denied or limited in her ability to participate in or benefit from Camp Ramah's educational programs or activities on the basis of sex.

77.     As a direct and proximate result, Plaintiff continues to suffer damages, including but not limited to, lost educational benefits and opportunities, emotional pain and trauma, and the loss of enjoyment of her life.

**COUNT TWO**
**Violation of Title IX – 20 U.S.C. § 1681(a)**
(Discrimination in Violation of Title IX of the Education Amendments – Hostile Environment)
(Against The Ramah Commission and Camp Ramah)

78.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 77 as if fully set forth herein.

79.     The Ramah Commission and Camp Ramah are Title IX funding recipients.

80.     The response of the Ramah Commission and Camp Ramah to Plaintiff's report of sexual assault, including directing Plaintiff to keep quiet about the assault, failing to follow the standard Protocol, failing to inform law enforcement, permitting the perpetrator of the sexual assault to remain at Camp Ramah, and failing to take other corrective action, including removing Linden as Director of Camp Ramah, has amplified the hostile environment at Camp Ramah and further deprived Plaintiff of educational opportunities.

actions against her in instructing her to keep silent and/or failing to following the standard Protocol and/or failing to remove Linden as Director of Camp Ramah.

88.     Ms. Doe informed Camp Ramah of the gender discrimination and retaliation that Ms. Doe faced, but the Defendants acted with deliberate indifference to these illegal acts.

89.     These discriminatory and illegal actions send a message to Plaintiff and all members of Camp Ramah that students will face undesirable consequences for exercising their rights under Title IX and taking measures to protect themselves from gender-based violence.

90.     Ms. Doe suffered an adverse action because of her protected activity. Had she not informed Defendants of her sexual assault, she would not have been instructed and shamed by Linden to keep quiet and that this was just "some horny boy", and she would not have suffered the feelings of ongoing fear of further sexual assault, abandonment, worthlessness and humiliation.

91.     As a direct and proximate cause of the Ramah Committee and Camp Ramah's unlawful acts and its violations of Title IX, Plaintiff continues to suffer damages, including but not limited to lost educational benefits and opportunities and emotional pain and trauma.

## COUNT FOUR
### Violation of the NYSHRL
(Against Camp Ramah)

92.     Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 91 as if fully set forth herein.

93.     Camp Ramah is a provider of public accommodations within the meaning of the NYSHRL.

94.     Plaintiff was denied full and equal enjoyment of an educational opportunity while attending Camp Ramah on account of gender based violence, sexual assault, and sex discrimination. This occurred when Camp Ramah perpetuated an unsafe and hostile

by punishing Plaintiff when she reported that she had been a victim of sexual violence at Camp Ramah at the hands of a minor male camper and reported the incident to Camp Ramah and Linden so that they would protect her safety and rights under Title IX.

101. Defendants further breached their duty of care by instructing Plaintiff to keep quiet, and not tell her parents, about her assault and telling her that her assailant was "just some horny boy," failing to follow the Protocol, failing to report Mr. Roe's behavior to law enforcement, and permitting Mr. Roe to remain at camp, and failing to remove Linder as the Director of Camp Ramah, all of which foreseeably caused Ms. Doe further harm.

102. Camp Ramah, which accepts financial dues from the families of campers in exchange for their attendance at the camp, and which promises to enrich and protect its members through, *inter alia*, maintaining safe facilities for children and facilitating the development of healthy relationships, owed Plaintiff a duty of care.

103. Camp Ramah breached its duty of care toward Plaintiff and her family by failing to uphold its promise to keep its minor campers safe and to educate campers regarding sexual assault. Camp Ramah and Linden failed to enforce the policies, practices, and promises made to its families and campers pertaining to non-discrimination, reasonable safety and the handling of misconduct. It failed to do so causing foreseeable harm to Plaintiff.

104. Camp Ramah and the Ramah Committee breached their duty of care toward Plaintiff and her family by failing to investigate, discipline, reprimand, or otherwise address conduct that harmed Plaintiff and violated the Protocol.

105. The Protocol sets forth that a camp's priority is "to protect the well-being of children in its care. This priority includes a camp's endeavor to manage and minimize the risk of child abuse occurring 'on its watch' and to sensitively and appropriately report and handle claims

111. Camp Ramah and the Ramah Committee negligently trained and supervised Linden and negligently retained him in the role of Director at Camp Ramah, even after Ms. Doe had made complaints to Camp Ramah and the Ramah Committee about Linden's conduct.

112. Defendants were aware that Plaintiff had been subject to sexual assault by Mr. Roe at Camp Ramah.

113. It was foreseeable that instructing Plaintiff to remain silent about the sexual assault, permitting Mr. Roe to remain at Camp Ramah, thus making Plaintiff vulnerable to future assault, and failing to inform Plaintiff's parents and the authorities about the sexual assault was discriminatory and illegal and would result in considerable emotional harm to Plaintiff. Furthermore, it was foreseeable that failing to address and seek treatment for the sexual assault on Plaintiff and permitting Mr. Roe to remain at Camp Ramah would lead to considerable emotional harm to Plaintiff.

114. Defendants committed intentional or negligent acts or omissions which resulted in Plaintiff suffering physical, psychological and other injuries and conditions as a direct and proximate result of conduct which constitutes a sexual offense committed against a child less than eighteen years of age, as defined in Article 130 of the New York Penal Law.

115. It is hereby alleged pursuant to C.P.L.R. § 1603 that the foregoing cause of action is exempt from the operation of C.P.L.R. § 1602, including but not limited to C.P.L.R. § 1602(7).

116. As a direct and proximate result of this negligence, Plaintiff suffered and continues to suffer humiliation and emotional distress.

## COUNT SEVEN
## INTENTIONAL INFLICTION OF EMOTION DISTRESS
(Against Camp Ramah and Linden)

21

124. Plaintiff brings each and every claim permissible under New York law for her injuries and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under New York law, including but not limited to: personal injuries; past, present and future pain and suffering; past, present and future medical expenses; disability; mental anguish; loss of the capacity for the enjoyment of life; incidental expenses; permanent injuries; and consequential damages to be proven at trial.

125. As a direct and proximate result of the conduct of Camp Ramah and Linden, Plaintiff did suffer severe emotional distress.

## COUNT EIGHT
### NEGLIGENT INFLICTION OF EMOTION DISTRESS
(Against Camp Ramah and Linden)

126. Plaintiff hereby re-alleges and incorporates by reference Paragraphs 1 through 125 as if fully set forth herein.

127. Camp Ramah and Linden owed Plaintiff, as a minor camper in their custody, control and care in July and August 2018, a duty of care to supervise and provide a safe environment. Camp Ramah and Linden, moreover, owed Plaintiff a duty of care to follow the Protocol.

128. Camp Ramah and Linden breached their duty of care to Plaintiff in failing to follow the Protocol when informed of the sexual assault against Plaintiff. In addition, Linden breached his duty of care to Plaintiff by his attempt to cover up and hush the sexual assault, including (a) directing Plaintiff not to inform her parents that she was sexually assaulted at Camp Ramah, (b) shamefully downplaying the seriousness of the sexual assault by telling Plaintiff that this was "just some horny boy", and (c) telling Plaintiff's mother several weeks after the sexual

to enrich and protect Plaintiff through, *inter alia*, maintaining safe facilities for children and facilitating the development of healthy relationships.

138. Further, Defendants agreed to keep the parents of the Plaintiff informed of all relevant information concerning their minor daughter while at Camp Ramah.

139. Defendants breached this agreement, in which Plaintiff was an intended third-party beneficiary, by failing to provide a safe environment for minors and failing to properly supervise minors, including Plaintiff, attending Camp Ramah.

140. Defendants further breached their agreement, in which Plaintiff was an intended third-party beneficiary, by not informing the parents of the sexual assault suffered by their minor daughter in the hours, days and weeks after it occurred, despite having actual knowledge of the incident.

141. Defendants further breached their agreement, in which Plaintiff was a third-party beneficiary, by punishing Plaintiff when she reported that she had been a victim of sexual violence at Camp Ramah at the hands of a minor male camper and reported the incident to Camp Ramah and Linden so that they would protect her safety and rights.

142. Defendants further breached their agreement, for which Plaintiff was a third-party beneficiary, by instructing Plaintiff to keep quiet, and not tell her parents, about her assault and telling her that her assailant was "just some horny boy," failing to follow the Protocol, failing to report Mr. Roe's behavior to law enforcement, and permitting Mr. Roe to remain at camp, and failing to remove Linden as the Director of Camp Ramah, all of which are part and parcel of providing a safe environment for Ms. Doe and keeping her parents informed of all relevant and important information concerning her time at Camp Ramah.

152. Defendants broke their second promise by not informing the parents of the sexual assault suffered by their minor daughter in the hours, days and weeks after it occurred, despite having actual knowledge of the incident.

153. Defendants further broke this promise by punishing Plaintiff when she reported that she had been a victim of sexual violence at Camp Ramah at the hands of a minor male camper and reported the incident to Camp Ramah and Linden so that they would protect her safety and rights.

154. Defendants further broke their promises to Plaintiff and her parents by instructing Plaintiff to keep quiet, and not tell her parents, about her assault and telling her that her assailant was "just some horny boy," failing to follow the Protocol, failing to report Mr. Roe's behavior to law enforcement, and permitting Mr. Roe to remain at camp, and failing to remove Linden as the Director of Camp Ramah, all of which are part and parcel of providing a safe environment for Ms. Doe and keeping her parents informed of all relevant and important information concerning her time at Camp Ramah.

155. Plaintiff and her parents relied on the promises of the Defendants when making a decision about which camp the Plaintiff would attend.

156. The Defendants broke their promises to Plaintiff and her Parents.

157. Defendant should be estopped from denying that such a promise was made and is enforceable.

158. As a direct and proximate result of the breach of these promises, Plaintiff suffered harm and damages in an amount to be determined by a jury at trial.

I. Award Plaintiff punitive damages due to the Defendants' entire want of care that would raise the presumption of conscious indifference to consequences. The Defendants' conduct involved malice, oppression, insult, wanton disregard, and/or reckless disregard of Plaintiff's rights. Punitive damages are needed to protect the public from similar acts and deter the defendant going forward;

J. Award Plaintiff reasonable attorneys' fees and costs expended in litigating this matter; and

K. Award to Plaintiff such other relief as is deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: New York, New York
June 6, 2022

Wylie Stecklow PLLC

_____
Wylie M. Stecklow
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
New York, New York 10019
Tel: (212) 566-8000 x 3
Fax: (212) 202-4952
ECF@WylieLAW.com


Giskan Solotaroff & Anderson LLP
Catherine E. Anderson
90 Broad St., 2nd Floor
New York, New York 10004
(212) 847-8315
CAnderson@GSlawny.com